**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:97CR-23**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| AQUILIA MARCIVICCI BARNETTE, | ) | |
|     Defendant. | ) | |

THIS MATTER is before the Court upon remand from the Fourth Circuit Court of Appeals for further consideration in light of *Miller-El v. Dretke*, 545 U.S. 231 (2005). The Fourth Circuit's remand Order left it to the discretion of the district court how to proceed on remand. By way of a Nov. 30, 2007 Order, this Court sought input from the parties regarding how the Court should proceed and what type of evidence it could and should consider.[1] (Doc. 634.)

On Jan. 2, 2008, Barnette filed a brief advocating that the Court order a new sentencing proceeding or, in the alternative, hold an evidentiary hearing. (Doc. 637.) He also seeks broad and far-reaching discovery. The Government filed a brief advocating that the Court hold another *Batson* hearing addressing only the third prong of the *Batson* analysis.[2] (Doc. 638.) Although the Government is not opposed to Barnette presenting evidence of purposeful discrimination at a

---

[1] A brief summary of the procedural history of the instant case is contained in the Nov. 30, 2007 Order. (Doc. 634.)

[2] In *Batson v. Kentucky,* 476 U.S. 79, 96-98 (1986), the Supreme Court established a three-pronged test for determining if a party purposefully exercised its peremptory strikes in a racially discriminatory manner.

hearing, the Government is opposed to providing Barnette any discovery.

Among Barnette's discovery requests is that the Government be ordered to provide to the defense complete copies of the juror questionnaires that the prosecutors used during Barnette's 2002 jury selection. On remand from the U.S. Supreme Court to the Fourth Circuit Court of Appeals, the Government included in the Supplemental Joint Appendix the completed questionnaire of an African-American juror, Betty Campbell, who had been excused for cause. (Joint Supplemental App. 143-70.) The cover sheet of the questionnaire is an instruction sheet. Across the top of the instruction sheet, someone had written the juror's name, the fact that she was excused for cause, and the notation "B/F." (Joint Supplemental App. 143.) Barnette argues that the presence of the race and gender notation on the cover sheet of the Government's copy of Juror Campbell's questionnaire is evidence that the Government purposefully discriminated against black jurors during jury selection. *See Miller-El*, 545 U.S. at 264, 266 (citing as evidence of purposeful discrimination the fact that Miller-El's prosecutors had made notes of the race of each prospective juror). He also points out that when the Government included in the appellate record the completed questionnaires of eight other prospective jurors (five black and three white), it did not include the instruction sheet for any of those questionnaires. (Joint Supplemental App. 171, 198, 225, 252, 279, 306; Second Joint Supplemental App. 1, 28.) Barnette asserts that he should have access to complete, unexpurgated copies of all of the juror questionnaires from his 2002 jury selection that currently are in the Government's possession so that he can determine if there is other evidence of purposeful discrimination. Barnette contends that he is entitled to these documents pursuant to *Miller-El*, *Batson*, and *Brady v. Maryland*, 373

U.S. 83 (1963)[3]. Among the Government's arguments in opposition is that these documents contain privileged, work-product of its attorneys.

At the outset, the Court notes that neither *Miller-El* nor *Batson* vest or extend discovery rights to the opponent of allegedly discriminatory peremptory strikes. Additionally, Barnette has not cited, nor could this Court find, any U.S. Supreme Court or federal appellate court case applying *Brady* in a *Batson* context. Nor has Barnette articulated how evidence regarding the Government's use of peremptory strikes is "material either to *guilt* or *punishment* . . . ." *Brady*, 373 US at 87 (emphasis added). Furthermore, the Supreme Court has not determined that *Brady* requires prosecutors to disclose work-product, which is the Government's principle objection to disclosing its copies of the juror questionnaires. *See Goldberg v. United States*, 425 U.S. 94, 98 n. 3 (1976) (reserving this question). The federal appeals courts that have addressed the issue have declined to apply *Brady* to attorneys' "opinion" work-product. *See Morris v. Ylst*, 447 F.3d 735, 742 (9th Cir. 2006) ("[I]n general, a prosecutor's opinions and mental impressions of the case are not discoverable under *Brady* unless they contain underlying exculpatory facts."); *Williamson v. Moore*, 221 F.3d 1177, 1182 (11th Cir. 2000) (determining that "opinion work product enjoys almost absolute immunity," except in extraordinary circumstances involving the crime-fraud exception).

Nevertheless, because the Government has placed the hand-written notations of prospective juror Campbell's race and gender into the record, the Court will order the Government to submit all of its copies of the juror questionnaires from Barnette's 2002 jury

---

[3] In *Brady*, the United States Supreme Court held that the prosecution deprives a criminal defendant of due process when it suppresses evidence that is "favorable to an accused . . . where that evidence is material either to guilt or punishment . . . ." 373 US at 87.

selection for an *in camera* review by the Court.  *See Kerr v. U.S. Dist. Court for Northern Dist. Of California*, 426 U.S. 394, 405 (1976) ("*In camera* review of the documents is a relatively costless and eminently worthwhile method to insure that the balance between petitioners' claims of irrelevance and privilege and plaintiffs' asserted need for the documents is correctly struck.") (footnote omitted).  The Court will defer a decision on all other discovery matters until after its review of the Government's copies of the questionnaires.

IT IS HEREBY ORDERED THAT the Government submit for *in camera* review the prosecutors' working copies of all juror questionnaires from Barnette's 2002 jury selection that are in the Government's possession.  Such copies should be unredacted and include the instruction cover sheet for each juror's questionnaire.  The Government shall submit these documents **UNDER SEAL** within 30 days of the filing of this Order.

Signed: April 15, 2008

Richard L. Voorhees
United States District Judge