IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:97CR-23

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| AQUILIA MARCIVICCI BARNETTE, | ) | |
| Defendant. | ) | |

THIS MATTER is before the Court upon remand from the Fourth Circuit Court of Appeals for further consideration in light of Miller-El v. Dretke, 545 U.S. 231 (2005). United States .v. Barnette, No. 02-20 (4th Cir. filed Aug. 28, 2007). The issue before the Supreme Court in Miller-El was whether the defendant had proved that the prosecution had engaged in purposeful discrimination when it exercised peremptory strikes against African American jurors.

PROCEDURAL HISTORY

By way of a Nov. 30, 2007 Order, the Court sought input from the parties regarding how it should proceed in light of the Fourth Circuit's mandate.[1] (Doc. 634.) On Jan. 2, 2008, Barnette filed a brief advocating that the Court order a new sentencing proceeding or, in the alternative, hold an evidentiary hearing. (Doc. 637.) He also sought broad and far-reaching discovery. The Government filed a brief advocating that the Court hold another Batson hearing

---

[1] A brief summary of the procedural history of the instant case is contained in the Nov. 30, 2007 Order. (Doc. 634.)

addressing only the third prong of the Batson analysis.[2]  (Doc. 638.)  Although the Government was not opposed to Barnette presenting evidence of purposeful discrimination at a hearing, the Government opposed providing Barnette any discovery.

Deferring consideration of discovery issues, the Court ordered the Government to submit unredacted copies of all juror questionnaires in its possession for in camera review.  (Doc. 645.)  The Government complied and, although not requested to do so, also provided copies of hand-written notes taken by prosecutors during voir dire.  Having reviewed the questionnaires, the voir dire transcript, and the prosecutors' voir dire notes, the Court is prepared to address discovery issues.  The Court will construe Barnette's post-remand brief (Doc. 637) as a Motion for Discovery and the Government's post-remand brief (Doc. 638) as a Response opposing the Motion for Discovery.

DISCUSSION

A.  Legal Principles

The threshold determination for this Court is to interpret the mandate of the Fourth Circuit Court of Appeals.  When the United States Supreme Court granted certiorari, vacated the judgment, and remanded Barnette's case to the Fourth Circuit "for further consideration in light of Miller-El v. Dretke," Barnette v. United States, 546 U.S. 803 (2005), the Court was not taking the position that Miller-El actually affected the outcome of United States v. Barnette, 390 F.3d 775 (4th Cir. 2004).  See U.S. v. M.C.C. of Florida, Inc., 967 F.2d 1559, 1562 (11th Cir. 1992) (discussing the parameters of the mandate when a superior court remands for further

---

[2]In Batson v. Kentucky, 476 U.S. 79, 96-98 (1986), the Supreme Court established a three-pronged test for determining whether a party purposefully exercised its peremptory strikes in a racially discriminatory manner.

2

consideration in light of a new legal decision). Instead, it was instructing the Fourth Circuit to make that determination. See id. In turn, the Fourth Circuit turned that task over to this Court when it remanded Barnette's case "for further consideration in light of Miller-El v. Dretke, 545 U.S. 231 (2005)." United States .v. Barnette, No. 02-20 (4th Cir. filed Aug. 28, 2007). Therefore, the mandate is limited in nature. See M.C.C. of Florida, Inc., 967 F.2d at 1562. It does not require the District Court to nullify all prior proceedings. See id. It merely requires the Court to reconsider its opinion with respect to whether Barnette proved purposeful discrimination at his Batson hearing in light of the law set forth in Miller-El. See id. Consequently, this Court is free to retain any or all of its prior findings of fact and conclusions of law with respect to Barnette's Batson claim that, upon reconsideration, it determines to be unaffected by Miller-El.³ See id.

In Miller-El, the Supreme Court considered a variety of evidence in determining that the petitioner, Miller-El, had met his burden of proving purposeful discrimination. 545 U.S. at 240-64. However, Miller-El did not change the nature, quantity, or quality of the evidence that a trial court may consider when assessing the plausibility of a prosecutor's explanations for his peremptory strikes under Batson. In other words, it did not announce new law; it merely applied existing law under Batson to the facts of the case before it. While Miller-El retained Batson's requirement that the trial judge assess the plausibility of the prosecutor's explanation for striking a juror "in light of all of the evidence with a bearing on it[]", Miller-El, 545 U.S. at 252 (citing

---

³For example, in Miller-El the question before the Supreme Court was whether the state courts' conclusion that the defendant had failed to prove purposeful discrimination under the third step of the Batson analysis was unreasonable. 545 U.S. at 266. Therefore, this Court's finding that prosecutors offered race neutral explanations for all of their strikes under step two of the Batson analysis is unaffected by Miller-El.

3

Batson, 476 U.S. at 96-97), it did not shift the burden from the defendant to prove purposeful discrimination.

Moreover, Miller-El is silent with respect to a trial court's responsibility to comb through the available evidence for signs of purposeful discrimination when the defendant fails to do so. Cf. U.S. v. Walley, 567 F.3d 354, 358 (8th Cir. 2009) (refusing to consider pretext argument raised for first time on appeal because the defendant failed to make that argument in the district court); United States v. Taylor, 509 F.3d 839, 849 (7th Cir. 2007) (refusing to fault trial court for failing to recognize prosecutor's misstatements of the record where defendant bore burden of proving pretext and defendant failed to bring misstatements to the district court's attention); United States v. Houston, 456 F.3d 1328, 1338-39 (11th Cir. 2006) (refusing to review pretext argument that defendant failed to raise during Batson hearing and rejecting defendant's argument that district court had an independent duty to conduct a comparative juror analysis notwithstanding defendant's failure to alert the district court to existence of similarly situated jurors); but see United States v. Torres-Ramos, 536 F.3d 542, 560 (6th Cir. 2008) (placing affirmative duty on district court to examine easily available, relevant material for evidence of pretext even if defendant fails to do so). Nothing in Miller-El requires a trial court that afforded a defendant a full Batson hearing during jury selection to grant the defendant a second bite at the apple on remand by allowing him to present evidence of purposeful discrimination that was available to him but that he failed to present at his Batson hearing. Furthermore, under Fourth Circuit law, the mandate rule "forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district

4

court."[4]  United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993).

B. Discovery Requests

In his Motion for Discovery, Barnette seeks the following:

1. Complete and unexpurgated copies of the government's copies of juror questionnaires in this case, including all notations regarding the race or gender of the jurors.
2. Complete and unexpurgated copies of any notes, memoranda, and recordings of any kind made by the government in preparation for or during voir dire in this case.
3. Complete and unexpurgated copies of the government's copies of juror questionnaires, with accompanying work product associated with jury selection and preparation for jury selection, in all cases in which the two Assistant U.S. Attorneys who prosecuted his case have participated as prosecutors.
4. A description of any training and instruction, including topics, speakers, modes of presentation, and dates, that the United States Attorney's Office for the Western District of North Carlina provides to its attorneys regarding jury selection.
5. Any training guide, manual, chapter, videotape, audiotape or other training material regarding jury selection in the possession of any attorney in the employ of the United States Attorney's Office for the Western District of North Carolina.
6. The name and number of any case prosecuted by either of the Assistant U.S. Attorneys who prosecuted his case in which challenges were made under Batson.
7. The title, forum, dates and written materials from any lecture, speech or panel regarding jury selection in which either of the Assistant U.S. Attorneys who prosecuted his case have participated.

(Doc. 637 13-14.)  Barnette contends that he is entitled to this discovery pursuant to Miller-El,

---

[4]The Court is aware that the Fourth Circuit expanded the evidence that this Court is to consider on remand when it addressed a pretext argument that Barnette presented for the first time on appeal.  U.S. v. Barnette, 390 F.3d 775, 796 (4th Cir. 2004).  The Court, of course, will consider Barnette's assertion that jurors Edwards and Stanford were similarly situated to five of the African American jurors struck by the prosecution.  However, the fact that the Fourth Circuit considered an argument not previously raised at trial does not mean that Barnette has an expanded right under Miller-El to present evidence of purposeful discrimination on remand that he could have but failed to present during his Batson hearing.

5

Batson, and Brady v. Maryland, 373 U.S. 83 (1963).

In Brady v. Maryland, the United States Supreme Court held that the prosecution deprives a criminal defendant of due process when it suppresses evidence that is "favorable to an accused . . . where that evidence is material either to guilt or punishment . . . ." 373 US at 87. Evidence is favorable "either because it is exculpatory, or because it is impeaching." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Evidence regarding the Government's use of peremptory strikes neither exculpates nor impeaches. Likewise, information regarding the Government's use of peremptory strikes is not "evidence [that] is material either to guilt or punishment . . . ." Brady, 373 US at 87 (emphasis added). Indeed, Barnette does not cite, nor could this Court find, any U.S. Supreme Court or federal appellate court case requiring disclosure under Brady of evidence that could be relevant to a Batson challenge. Cf. Jones v. Butler, 864 F.2d 348, 355 (5th Cir. 1988) (rejecting defendant's claim that prosecution's failure to disclose information about a prospective juror was a violation of Brady).

Furthermore, the Supreme Court has not determined that Brady requires prosecutors to disclose work product, see Goldberg v. United States, 425 U.S. 94, 98 n. 3 (1976) (reserving this question), which is one of the Government's objections to disclosing its copies of juror questionnaires and prosecutors' jury selection notes. The federal appeals courts that have addressed the issue have declined to apply Brady to attorneys' "opinion" work product. See Morris v. Ylst, 447 F.3d 735, 742 (9th Cir. 2006) ("[I]n general, a prosecutor's opinions and mental impressions of the case are not discoverable under Brady unless they contain underlying exculpatory facts."); Williamson v. Moore, 221 F.3d 1177, 1182 (11th Cir. 2000) (determining that "opinion work product enjoys almost absolute immunity," except in extraordinary

6

circumstances involving the crime-fraud exception). A prosecutor's notations of her mental impressions of jurors is "opinion" work product. In short, Barnette is not entitled to discovery under Brady v. Maryland.

As for Miller-El, as noted previously, that decision did not change the nature, quantity, or quality of the evidence that a trial court may consider when assessing the plausibility of a prosecutor's explanations for his peremptory strikes under Batson. Therefore, Miller-El did not vest or extend discovery rights to the opponent of allegedly discriminatory peremptory strikes.[5]

In his first two discovery requests, Barnette seeks prosecutors' work product connected with jury selection in his case. The basis for his request for copies of the Government's unexpurgated, unredacted juror questionnaires is two-fold. He first asserts that they would be useful to determine whether black and non-black jurors who gave similar answers on their questionnaires were questioned differently by prosecutors. (Doc. 637 12-13.) He also alludes to the fact that the Miller-El court considered the prosecutor's notation of each juror's race on his copy of juror cards evidence of pretext. (Doc. 637 13 ¶ 1.)

Barnette's first rationale must be rejected out-of-hand. Throughout jury selection, Barnette had his own copy of each juror's questionnaire. In the body of each questionnaire was the juror's race and gender. Additionally, the Court ordered that daily transcripts of voir dire be produced and copies be given to both sides. Consequently, during the Batson hearing, Barnette had both the copies of questionnaires and all of the voir dire transcripts. Had disparate questioning occurred, he had everything he needed to make that argument to the Court. Indeed,

---

[5]The Federal Rules of Criminal Procedure also are inapplicable because none of the requested material falls under Rule 16(a)(1).

Barnette made a disparate questioning argument after the Government struck M. Blakeney, albeit on grounds different from the one used here to justify his discovery request.[6] (J.A. 329:11-330:6.) Because Barnette had the means to raise a disparate questioning argument based upon a comparison of questionnaire responses and voir dire questions but failed to do so at his Batson hearing, he has waived the right to do so on remand.

The second basis for Barnette's request for unexpurgated, unredacted versions of the Government's copies of the questionnaires is the presence of a hand-written race and gender notation on a questionnaire included by the Government in the Supplemental Joint Appendix on appeal. (Supplemental J.A. 143.) The notation, "B/F", appears on the cover page of the questionnaire of a black, female juror, B. Campbell, who was struck for cause. The Government did not include the cover pages for the eight other questionnaires that it placed in the Supplemental and Second Supplemental Joint Appendices, so it is impossible to tell from the appellate record whether those questionnaires also had a race and/or gender notation on the cover sheets.[7] Barnette contends that because the race and gender of each juror was provided by the

---

[6]The defense argued that the prosecution attempted immediately to find grounds to eliminate an African American juror, Blakeney, by asking whether his employer knew that he was being considered for a jury. (J.A. 329:11-330:6.) The defense also argued that "the government realized that they had done that" and thereafter asked most of the subsequent jurors the same questions about employment. (J.A. 330:2-6.) Barnette waived this argument on appeal. Here, Barnette seeks copies of the questionnaires so that he can determine if the Government questioned jurors of different races differently despite the same or similar answers on their questionnaires. (Doc. 637 12-13.)

[7]Barnette speculates that the Government may have wanted to conceal the fact that prosecutors had made race and gender notations on their copies of the questionnaires by not including the other jurors' cover pages in the appellate record. In light of the fact that the Government did not conceal the first page of B. Campbell's questionnaire, the more logical explanation is that the first pages of the other questionnaires contained other work product. Indeed, an in camera review of the Government's copies of the questionnaires revealed that with

8

juror elsewhere in the questionnaire, the presence of a race and gender notation on the cover sheet of Campbell's questionnaire is evidence that prosecutors acted with discriminatory purpose in selecting the jury.[8]

Although he does not state so, Barnette presumably wants unredacted copies of the Government's questionnaires so that he can review any notes made by prosecutors for evidence of discriminatory intent. The Government objects to disclosure of the questionnaires on the grounds that they contain protected work product. The Court has conducted an in camera review of the questionnaires and has confirmed that a substantial number have prosecutors' hand-written notes on them, including opinion work product in the form of jury selection strategy and mental impressions of jurors, some of it unflattering. Some of the questionnaires have a race and gender notation on the cover sheet,[9] but the Court finds that the other hand-written notes on the cover and within the body of the questionnaires display no discriminatory intent on the part of prosecutors. Barnette's request for copies of the questionnaires is denied. See United States v. Tindle, 860 F.2d 125, 131 (4th Cir. 1988) (finding no error in district court's refusal to provide defense counsel copies of prosecutor's jury selection notes that the prosecutor had submitted for in camera review).

---

the exception of B. Campbell's questionnaire, the first pages of all of the questionnaires included in the appellate record had multiple hand-written notes on them.

[8]In his post-remand brief, Barnette notes that the Miller-El Court considered the prosecutor's notation of each juror's race on the State's copy of juror cards evidence of pretext. (Doc. 637 13 ¶ 1.)

[9]Of the 204 questionnaires submitted by the Government for in camera review, approximately 117 had a race and gender notation on the cover sheet. Of the 117, sixty-four were eligible jurors. Overall, there were sixty-five eligible jurors, but the questionnaire for Sean Mather appears to be missing.

However, the presence of race/gender notations on the cover sheet of juror questionnaires should be explained by the Government. The issue of the race/gender notation on Campbell's questionnaire was not raised until Barnette filed his Motion to Remand in the Fourth Circuit. However, he would have been unaware of it until the appellate record was filed. The Fourth Circuit was unable to reconsider on remand from the Supreme Court whether Barnette had proved purposeful discrimination because there was nothing in the appellate record to explain the presence of the race/gender notation on Campbell's questionnaire. Likewise, this Court cannot reevaluate whether Barnette has proved purposeful discrimination until its presence is explained. While the undersigned can think of several non-discriminatory reasons for prosecutors to have noted jurors' race and gender on the cover sheet of their questionnaires, <u>Miller-El</u> cautions trial courts against engaging in speculation along those lines. 545 U.S. at 245 n.4 (criticizing dissent for focusing on reasons that prosecutors had not given for striking black juror). Therefore, this Court will order a hearing at which the Government should be prepared to explain who made race and gender notations on juror questionnaires and for what purpose.

Barnette also requests copies of all notes taken by prosecutors in preparation for and during jury selection. Barnette has provided no basis for his request, but presumably, it is to allow him to review the notes for evidence of discriminatory intent on the part of the prosecutors. The Government objects, asserting that these notes contain privileged work product. Although the Court did not request it, when the Government provided its copies of the juror questionnaires for <u>in camera</u> review, it also provided the Court copies of the notes prosecutors took during jury selection. The Court has reviewed the prosecutors' jury selection notes and confirms that they contain opinion work product in the form of selection strategy and mental impressions of jurors.

10

Furthermore, the Court finds that the prosecutors' jury selection notes display no discriminatory intent on the part of prosecutors. Barnette's request for discovery of prosecutors' jury selection notes is denied. See Tindle, 860 F.2d at 131.

The basis for Barnette's discovery requests three through seven appears to be the Miller-El Court's consideration of historical evidence of discriminatory jury selection practices in the local prosecutor's office. 545 U.S. at 263-64. However, that historical evidence was before the Miller-El Court because it had been entered into the trial record during jury selection.[10] Therefore, when the trial judge in Miller-El subsequently assessed the credibility of the prosecutor's explanations for his strikes as required by Batson, the historical evidence already was among "the evidence with a bearing on [the plausibility of the prosecutor's explanations for the strikes]." Miller-El, 545 U.S. at 252.

Had there been historical evidence of discriminatory jury selection practices and policies in the United States Attorney's Office for the Western District of North Carolina or among its prosecutors, nothing prevented Barnette from bringing evidence of that fact to the attention of the District Court prior to trial and seeking discovery at that point. Likewise, nothing prohibited him

---

[10]Miller-El was tried during the Swain regime, under which a defendant could make out a prima facie case of purposeful discrimination only by showing that "in case after case, whatever the circumstances, whatever the crime and whoever the defendant or victim," the prosecutor had used peremptory strikes to remove qualified black veniremen who had survived challenges for cause, "with the result that no [blacks] ever serve on petit juries." Swain v. Alabama, 380 U.S. 202, 222-24 (1965). Consequently, Miller-El's attorneys arrived for jury selection armed with evidence that the Dallas County District Attorney's Office had a history of excluding black members from criminal juries, and the trial court received evidence of that practice when Miller-El's counsel objected to the prosecutor's strikes. See Miller-El, 545 U.S. at 236. While Miller-El's case was on appeal, Batson was decided, and the Texas Court of Criminal Appeals remanded Miller-El's case to the trial court to determine whether Miller-El could show discriminatory intent under Batson based upon the prosecutor's actions at his own trial. See id.

11

at his <u>Batson</u> hearing from presenting whatever evidence he had of discriminatory jury selection practices and policies. Even now Barnette does not allege or point to any evidence that prior to or at the time of his <u>Batson</u> hearing, the United States Attorney's Office for the Western District of North Carolina trained or encouraged its prosecutors to exclude minorities from jury service. Nor does he allege or point to any evidence that either of his prosecutors had a reputation for or a history of engaging in discriminatory jury selection practices. Whatever else <u>Batson</u> and <u>Miller-El</u> might require, neither authorizes a defendant to go on a fishing expedition through the Government's files in hopes of finding some damaging evidence. Barnette's discovery requests three through seven are denied as overly broad, overreaching, burdensome and without evidentiary foundation.

C.  Hearing

The Court will order a limited hearing in this case, governed by the parameters articulated herein. The purpose of the hearing is for the Government to provide an explanation for the presence of race and gender notations on the cover sheets of juror questionnaires and to answer any other questions posed by the Court. Only the Court will conduct questioning, as it would at a <u>Batson</u> hearing. Barnette may present or identify any evidence of purposeful discrimination that was not available to him at the time of his <u>Batson</u> hearing or that could not have been discovered by him through due diligence at the time of his <u>Batson</u> hearing. Additionally, at the conclusion of the hearing, both sides may make brief oral arguments supporting their positions under the third prong of <u>Batson</u>. The parties will be permitted to file thorough written briefs after a transcript of the hearing becomes available.

CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Discovery [Doc. 637] is DENIED.

**IT IS FURTHER ORDERED** that a hearing is hereby scheduled for September 21, 2009 at 2:00 p.m. in the United States Courthouse in Statesville, North Carolina, 2nd Floor Courtroom, 200 W. Broad Street.

**IT IS FURTHER ORDERED** that the United States Marshal Service transport Defendant to the United States Courthouse in Statesville, North Carolina and make him available for the hearing scheduled for September 21, 2009 at 2:00 p.m.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the United States Marshal Service.

Signed: July 13, 2009

Richard L. Voorhees
United States District Judge